**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PRUDENTIAL INSURANCE COMPANY
OF AMERICA,
    *Plaintiff*,

    v.                                          No. 3:21-cv-00541 (VAB)

JENNIFER KOWALSKI,
    *Defendant.*

**RULING AND ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS AND DEFUALT
JUDGMENT**

Pending before the Court is Prudential Insurance Company of America's ("Plaintiff" or

"Prudential") motion for sanctions and default judgment against Jennifer Kowalski

("Defendant"). Prudential requests that the Court enter default judgment against Ms. Kowalski

under Rule 37 or Rule 55, establish as factual that Ms. Kowalski accessed and retained

confidential and trade secret information inadvertently sent to her, grant Prudential reasonable

attorney's fees and costs, and enter an order prohibiting Ms. Kowalski from using any retained

trade secret and confidential information from Prudential. Mot. for Alternative Sanctions and

Default Judgment, ECF No. 397 (Sept. 12, 2024) ("Pl.'s Mot.").

For the following reasons, Prudential's motion is **GRANTED.**

The Court will enter default judgment against Ms. Kowalski.

The following adverse finding of fact has been established: Ms. Kowalski accessed and

retained in her Google Drive, OneDrive, and Dropbox cloud storage accounts Prudential's trade

secret and confidential information from two e-mails inadvertently sent by Epiq in June of 2021.

Ms. Kowalski must pay to Prudential reasonable attorney's fees and costs, an amount

totaling **$181,175.26 by January 31, 2025.**

1

The Parties are further ordered to do the following for the deletion of protected data:

- Prudential will direct Epiq Systems ("Epiq") to delete permanently any Prudential information contained on the devices that Ms. Kowalski provided to Epiq ("Kowalski Devices"), including the list of data and files to be deleted pursuant to the parties' Confidential Settlement Agreement ("Deletion List"), Exhibit B of Plaintiff's Mot. for Sanctions and Default Judgment, ECF No. 398-4; ECF No. 399.

- Prudential will direct Epiq to return the Kowalski Devices to Ms. Kowalski within seven (7) business days following Epiq's completion of its review and deletion obligations ("Epiq Return Date").

- To remedy Prudential's inability to ensure Ms. Kowalski may no longer use or access Prudential confidential and/or trade secret information located on her cloud storage accounts, including Google Drive, Dropbox, and OneDrive, Ms. Kowalski shall delete any Prudential data which Epiq inadvertently provided to Ms. Kowalski, or information contained on the Deletion List in her possession or otherwise accessible to Ms. Kowalski, whether through devices in her possession or third-party cloud sources within thirty (30) days of this Ruling and Order.

- Ms. Kowalski is prohibited from using, accessing, or disseminating any Prudential information, including any Inadvertently Produced Data or information listed on the Deletion List.

- Ms. Kowalski shall not, at any point in the future access, review, save, copy print, disclose, share, or in any way use any Prudential proprietary or confidential/and

or trade secret information, including without limitation the inadvertently

produced data or information listed on the Deletion List.

## I.    BACKGROUND[1]

On April 19, 2021, Prudential filed a Complaint against Ms. Kowalski, alleging violation

of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("Count One"), breach of contract

("Count Two"), misappropriation of trade secrets ("Count Three"), and conversion ("Count

Four"). Compl., ECF No. 1 (Apr. 19, 2021). Prudential alleged that, as a former employee, Ms.

Kowalski forwarded 700 e-mails containing trade secrets and confidential information from her

Prudential e-mail account to her personal e-mail account. *Id.* ¶¶ 41–42.

In June of 2021, Plaintiff's electronic discovery vender, Epiq, inadvertently sent data

containing Prudential's confidential and sensitive information in an e-mail to Ms. Kowalski and

her then-counsel. Order Granting in Part and Denying in Part Pl.'s Mot. to Compel, ECF No. 282

(Apr. 10, 2023) ("April 2023 Order").

To resolve Ms. Kowalski's access to this inadvertently produced data, the Court entered a

Stipulated Order on July 11, 2022, appointing Epiq to conduct a tailored forensic examination of

Ms. Kowalski's computer, e-mail, and file storage accounts. Order, ECF No. 201 (July 11, 2022)

("Stipulated Order"). This examination would identify data Epiq had inadvertently disclosed,

determine whether the data was sent to a third-party or transferred elsewhere, then ensure the

data was properly deleted. *Id.*

On February 14, 2023, Prudential moved to compel Ms. Kowalski to comply with the

Stipulated Order. Mot. to Compel Def. to Comply, ECF No. 254 (Feb. 14, 2023).

---

[1] The Court assumes familiarity with the factual and procedural background and will only reiterate what is necessary to address the pending motion and requested relief.

On April 10, 2023, after holding a hearing, Magistrate Judge Robert M. Spector issued an order granting the motion to compel and ordering Ms. Kowalski to provide Epiq access to her Dropbox, OneDrive, and Google Drive, or risk sanctions. April 2023 Order.

On April 18, 2023, the Court reaffirmed Ms. Kowalski's obligation to comply with the orders of Magistrate Judge Spector. *See* Amended Order, ECF No. 291 (Apr. 18, 2023) ("[T]he Court adopts the report and recommendation of Judge Spector[.] . . . Having determined that there is no reason for the orders of Judge Spector not to be complied with by Defendant, . . . no stay of these Orders are warranted.").

On April 21, 2023, the Court again ordered Ms. Kowalski to comply Magistrate Judge Spector's orders. Order, ECF No. 296 (Apr. 21. 2023) ("Defendant must comply with Judge Spector's Order, ECF No. 286, which this Court has now adopted as well.").

On April 24, 2023, the Court once again issued an order requiring Ms. Kowalski to comply with Magistrate Judge Spector's orders.  Order Denying Mot. to Vacate, ECF No. 298 (Apr. 24, 2023).

On May 3, 2023, the Court held a second hearing related to Ms. Kowalski's compliance with the Stipulated Order and subsequent April 2023 Order. Min. Entry, ECF No. 302 (May 3, 2023). After the hearing, the Court ordered that "[c]onsistent with these previous Orders, Ms. Kowalski specifically 'must provide Epiq access to her Dropbox, OneDrive, and Google Drive accounts, by May 5, 2023 at 5:00 p.m.'" Order, ECF No. 303 (May 3, 2023) (internal citations omitted). The Court warned Ms. Kowalski that "further delay will not be tolerated" and that if she failed to comply with the stated deadline "any reasonable expenses incurred by Plaintiff from that point forward until compliance may be sought and . . . if compliance continues to be an

issue, the Court will not hesitate to consider the imposition of other appropriate sanctions." *Id.*
(internal quotation marks omitted).

On January 4, 2024, the Court granted Prudential's Motion for Sanctions, finding Ms.
Kowalski responsible for reasonable expenses incurred by Prudential seeking her compliance
with previous orders. Order Granting Mot. for Sanctions, ECF No. 329 (Jan. 4, 2024).

On February 2, 2024, in response to a motion filed by Ms. Kowalski, the Court issued an
order reiterating that "Ms. Kowalski will be held financially liable for her refusal to comply with
this Court's clear directives" and warning Ms. Kowalski that "to the extent the Court needs to
take further actions to ensure compliance, if compliance is not obtained by March 1, 2024, the
Court will consider and likely take any and all such actions within the scope of its authority."
Order Denying Mot. to Vacate Order on Mot. for Sanctions, ECF No. 337 (Feb. 2, 2024).

On April 21, 2024, the Court set an in-person sanctions hearing to determine "what
sanctions will be issued, and whether additional sanctions need to be imposed" due to Ms.
Kowalski's continued noncompliance. Order, ECF No. 346 (Apr. 21, 2024). The Court ordered
the Parties to meet before the hearing and "bring any electronic equipment each side will need . .
. to discuss in detail precisely what information Ms. Kowalski has been ordered to turn over." *Id.*

On May 6, 2024, the Court issued an order stating: "to the extent the Court determines
that there is continued noncompliance, and compliance will only be accomplished through civil
confinement, the Court will consider that option at or following the upcoming sanctions
hearing." Order, ECF No. 356 (May 6, 2024).

On May 7, 2024, in response to a motion filed by Ms. Kowalski, *see* Second Mot. to
Amend/Correct, ECF No. 357 (May 6, 2024), the Court issued an order stating that "the Court
does not need nor will it entertain any more filings from Ms. Kowalski on the issue of

compliance with the Court's numerous Orders, including but not limited to the Court's authority with respect to the possible imposition of sanctions." Order, ECF No. 358 (May 7, 2024).

At the sanctions hearing, on May 8, 2024, the Court continued proceedings to another date to include the taking of evidence "on the issue of Ms. Kowalski's access to the Plaintiff's information through any or all of the following accounts[:] . . . Dropbox, OneDrive, Google Drive. . . . Ms. Kowalski's ability to obtain access to the accounts through [multi-factor authentication] also [would] be a proper topic of discussion." Order, ECF No. 362 (May 8, 2024).

On June 3, 2024, the Court held the evidentiary hearing. *See* Min. Entry, ECF No. 376 (June 3, 2024).

During this hearing, Ms. Kowalski was held in contempt and taken into custody due to frequent interruptions and outbursts.[2] *See* Tr. 21:6–18, ECF No. 378 ("Tr.") ("[T]he Court took what, in its view, certainly, is an extraordinary action, mainly because it felt like it really had not much choice. I think there were repeated opportunities with the Court on the record, basically,

---

[2] The following colloquy occurred between Ms. Kowalski and the Court:

>  MS. KOWALSKI: Objection. Hearsay. This was submitted with a motion to compel. This is not expert testimony. Plaintiff has not disclosed this person as their designated expert.
>  THE COURT: Okay. Your objection, to the extent you are worrying about disclosure, again, as I read from your own statement, you were well aware back in May, at the previous hearing, that this gentleman would be appearing. So, the notion about no disclosure is – that argument is rejected.
>  MS. KOWALSKI: Your Honor –
>  THE COURT: Hang on. Hang on. Miss Kowalski, this is the last time I will tell you.
>  MS. KOWALSKI: That is not –
>  THE [COURT]: Miss Kowalski, I will not repeat myself.
>  MS. KOWALSKI: Your Honor.

Tr. 19:15–20:22, ECF No. 378. After being warned a final time not to interrupt the Court, the Court held Ms. Kowalski in contempt. *See id.* at 20:7–22 ("THE COURT: . . . I will hold you contempt. Court security officers, just take her into custody. When she is ready to actually conduct herself properly in this court, I will come back.").

asking Miss Kowalski not to interrupt the Court, but there was a continuing to do so almost in defiance of the Court's order.").

Evidence was presented at the hearing as to whether Ms. Kowalski had data that was inadvertently produced by Epiq. Ashraf Massoud, an Epiq employee, testified that "certain emails were inadvertently and mistakenly sent to Miss Kowalski and her counsel," *id.* at 28:15–19, that included "links to . . . two different files that dealt with a MacBook Pro data that was recovered and data recovered from a Microsoft Surface laptop, in addition to cell phone data," *id.* at 30:15–18.

Around the time these e-mails were inadvertently sent, Epiq was conducting a forensic analysis on a Dell laptop obtained from Ms. Kowalski as part of discovery. *See id.* at 31:16–22. The data that had been inadvertently sent was found in five locations on the laptop, including the downloads folder, the desktop, and in the trash. *See id.* at 32:5–33:18.

Ms. Kowalski's Dell laptop had also been searched to determine if the inadvertently sent data had been transformed and/or transferred. *See id.* at 33:23–34:7 ("Q. (Mr. Wolfson) In addition to searching for the data that was inadvertently produced, did you also do further searches on the laptop to determine if the data was transformed in any way? A. [(Mr. Massoud)] Yes. Part of forensic analysis is to review, I think I mentioned earlier, things like USB history, was any USB plugged in, was data transferred to the USB device. We look at any internet history, was any email sent as an attachment, or were any cloud storage device sites accessed during this time.").

This search revealed that Google Drive, Dropbox, and OneDrive personal accounts by the name of Jennifer Kowalski were accessed. *See id.* at 36:11–37:19 ("THE WITNESS: It says 'Drive.Google.com viewing,' and that indicates someone logged into their Drive account to view

its contents. . . [T]here was authentication that occurred, and so somebody had logged into the DropBox account on that date and time. . . . As with the other Google Drive and DropBox, OneDrive shows that a personal account by the name of Jennifer Kowalski on OneDrive was being accessed.").  Epiq could not review these accounts because it lacked Ms. Kowalski's log-in credentials. *See id.* at 38:10–17 ("Q. Were you able to review the Google Drive, DropBox, or OneDrive accounts listed on this report to determine if any of the inadvertently produced data was in those accounts? A. I was not. Q. Why not? A. I don't have the proper log-in credentials to access the account.").

Ms. Kowalski then attempted to avoid answering questions about whether she had downloaded the inadvertently sent data:

> Q. [(Mr. Wolfson, Counsel for Plaintiff)] After receiving those emails from Epiq, you downloaded some of the information to your computer, correct?
> A. [(Ms. Kowalski)] There is no inadvertently produced data in this case. I was not using my computer.
> THE COURT: Is the answer yes or no? Did you download some of the information to your computer?
> MS. KOWALSKI: I did not download inadvertently produced data.
> THE COURT: I didn't ask about inadvertent. I'm not playing with loaded word games. Did you download information to your computer?
> MS. KOWALSKI: Your Honor –
> THE COURT: Yes or no, Miss Kowalski -- Miss Kowalski, yes or no?
> MS. KOWALSKI: Was Facebook and LinkedIn sent to me? I'm concerned about data hacking. They are in my items, and I'm asking for protection to comply for four years is -- and be held like this, the Court knows I have medical issues as a result of this. There is no – no allegation has been made in this case in two and a half years.
> THE COURT: You can keep going as long as you want, but I will get to the point I want to get to. You want to keep filibustering. I can stay here all night, and you can --
> MS. KOWALSKI: I --
> THE COURT: Hang on. You can stay in lockup until you decide to comply.
> MS. KOWALSKI: That is fine, Your Honor.

THE COURT: You made your choice. Mr. Wolfson, ask the question again. Your exact question is after receiving those emails from Epiq you downloaded some information. Ask the question again.

Q. (Mr. Wolfson) Ma'am, after receiving those emails with the links from Epiq you downloaded some of those files onto a computer you were using, correct?

A. There is no inadvertently produced data in this case.

THE COURT: Did you download some of those files onto a computer? Is it a yes or no? Did you download --

MS. KOWALSKI: I can't answer that way, Your Honor.

THE COURT: You can answer the question. Leave the thing, inadvertent out. Did you download -- after receiving emails from Epiq, did you download some of the information that was contained in those emails from Epiq? Did you download it to a computer, yes or no?

MS. KOWALSKI: I can't answer the question divesting the noun from the verb.

*Id.* at 109:7–112:11.

Testimony from Ms. Kowalski's previous deposition corroborated Mr. Massoud's

statements about the downloaded information:

Q. [(Counsel for Plaintiff)] Beginning line 13, you were asked: "Okay. For our purposes, let's just call it those couple of times, okay. There were a couple where, after you received, not just a spreadsheet of file names, but further links to the computer files as well, right?" And you answered, "CSP text files, yes." Then the question was asked, "Did you download any of those CSP text files?" "Answer. Yes. The link download to my computer is my understanding." That was your answer to those questions at that time, correct?

A. [(Ms. Kowalski)] I don't know what a CSP is . . .

Q. Ma'am, that was your answer at the time, correct?

A. Not the CSP part.

***

Q. For example, beginning at line 7, it reads, "Question. So you saw that it was downloaded? You saw, physically saw those CSV text files, yes, right?" You answered "Some, yes. Correct?

A. I answered "Text files. Some, yes." To the best of my recollection. I answered "Text files. Some, yes."

Q. And then you were asked at line 10. . . On what device or devices were they downloaded to?" And you answered, "A family member gave me a computer to use for purposes of this litigation." Correct?

A. Uh-hmm. Yes.

***

Q. And then you answered, Okay. Excuse me. "Question. Okay. Where is that computer now?" You then answered, "In my possession," correct?

A. Yes.

Q. "Question. Are those" -- and I will ignore the words CSP -- "text files that were downloaded still on the computer?" And you answered "Yes," correct?

A. That's correct.

*Id.* at 112:6–116:5

Finally, near of the end of her testimony, Ms. Kowalski stated the following: "Today's topic is whether I had access to any of these cloud sources . . . . We are talking Microsoft operating systems, DropBox, and Google Drive. They are the main hubs of the eight cloud sources that are used in every single thing connected to the internet. They are not just a big data dump. They sync to other accounts. They backtrack. They access phone links, Google voice, Strive, Google Maps, contact information. . . I cannot give keys to this information for my adversary's direct access." *Id*. at 123:2–14.

Following the June 3, 2024 hearing, Prudential filed a memorandum requesting that the Court "enter an Order again requiring [Ms. Kowalski] to provide all required usernames, passwords, multi-factor identification and credentials (the 'Credentials') so that Epiq can review Kowalski's Dropbox, Google Drive, and OneDrive locations in order to determine if any of the inadvertently produced data is located in those locations, as well as awarding Prudential its attorneys' fees and costs incurred pursuing its Motion for Sanctions." Post-Hrg. Memo., ECF No. 379, at 1 (June 21, 2024).

On June 21, 2024, Ms. Kowalski filed a motion to strike, moving "to strike the June 3, 2024 evidentiary proceeding including, inter alia, all testimony and evidence[.]" Mot. to Strike, ECF No. 380, at 1 (June 21, 2024).

On July 30, 2024, the Court issued an order granting Prudential's request for sanctions and denying Ms. Kowalski's motion to strike. Ruling and Order, ECF No. 382 (July 30, 2024) ("July Ruling and Order"). The Court ordered the following:

> By August 9, 2024, Ms. Kowalski shall provide Prudential, through its counsel, with the following: all required usernames, passwords, multi-factor identification and credentials so that Epiq can review Ms. Kowalski's Dropbox, Google Drive, and OneDrive locations in order to determine if any of the inadvertently produced data is located in those locations. If compliance is not obtained by August 9, 2024, monetary sanctions will be imposed only for the costs of Prudential having to enforce the Court's Order through the May 8, 2024, and the June 3, 2024, hearings.
>
> If by August 9, 2024, Ms. Kowalski has not complied, then Prudential shall submit the attorney's fees and costs associated with preparation for the May 8, 2024, and the June 3, 2024, hearings by August 16, 2024.
>
> Any response to that submission by Ms. Kowalski shall be due by August 23, 2024. If she complies by August 23, 2024, the Court will consider whether to waive, or reduce any or all of Prudential's requested attorney's fees and costs. If Ms. Kowalski does not respond by August 23, 2024, either by complying or in response to the motion for attorney's fees and costs, Prudential will have until August 30, 2024 to file a reply.
>
> If by the time of Prudential's reply due August 30, 2024, Ms. Kowalski has not complied, the Court will hold a final in person compliance hearing, at the U.S. District courthouse . . . . At that time, Ms. Kowalski will be asked in open court whether she will comply immediately. If she is not able to comply immediately at that final compliance hearing, she will be remanded to the custody of the U.S. Marshals, and confined civilly until she decides to comply.
> *Id.*

Since Ms. Kowalski did not provide the required information by August 30, 2024, the Court held a compliance hearing on September 3, 2024. Min. Entry, ECF No. 401 (Sept. 3, 2024).

At the hearing, Ms. Kowalski repeatedly stated that she would not comply with the Court's orders to produce her account information. *See, e.g.*, Tr., ECF No. 406, at 3:21–22 (Sept. 24, 2024) ("MS. KOWALSKI: I have an inability to comply with the Court order issued on July 30th"); *id.* at 9:21–25 ("[THE COURT:] Are you now willing to provide the information, provided that a protective order could be entered into? MS. KOWALSKI: My username and passwords? THE COURT: Yes. MS. KOWALSKI: I'm unable to provide those.").

As a result, consistent with the July Ruling and Order, Kowalski was taken into civil confinement, to be released upon compliance with the Court's orders and provision of the account information. *Id.* at 10:19–24 ("[THE COURT:] I have, unfortunately, no choice but to order you to be sort of civilly confined. . . . [T]hey will take you into custody, and then once you are able to comply with the Court's order, you will be released from custody.").

The next day, on September 4, 2024, the Court held another hearing, bringing Ms. Kowalski out of custody and providing her with another opportunity to provide her account information. *See* Order, ECF No. 390 (Sept. 3, 2024); Min. Entry, ECF No. 402 (Sept. 4, 2023).

At the September 4, 2023 hearing, Ms. Kowalski again refused to provide the log-in and multifactor authentication credentials to her Google Drive, OneDrive, and Dropbox accounts. *See* Tr., ECF No. 407, at 4:20–22 (Sept. 24, 2024) ("[THE COURT:] Miss Kowalski, do you intend to comply with the Court's order? MS. KOWALSKI: (No audible or visual response).").

After the hearing, the Court issued an order allowing Prudential to seek alternative sanctions under Rule 37(b)(2) of the Federal Rules of Civil Procedure, including "'directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims,' 'prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence,'

and 'rendering a default judgment against the disobedient party.'" Order, ECF No. 392 (Sept. 4, 2024) (citing Fed. R. Civ. P. 37(b)(2)(A)(i, ii, and vi)).

On September 12, 2024 Prudential filed a motion for Alternative Sanctions and Default Judgment. *See* Pl.'s Mot.

Ms. Kowalski never responded directly to this motion, instead choosing to file a "motion for writ" on October 1, 2024. Mot. for Writ, ECF No. 409 (Oct. 1, 2024).[3]

## II.    STANDARD OF REVIEW

Under Rule 37, a court can impose sanctions where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The sanctions may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "rendering a default judgment against the disobedient party." *Id*. 37(b)(2)(A)(i) and (vi). "In addition to the [sanctions] above, the court must order the disobedient party . . . to pay reasonable expenses, including attorney's fees, caused by the failure" to comply with the discovery order. *Id.* 37(b)(2)(C).

When considering whether to impose sanctions under Rule 37, courts consider four factors: "'(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the . . . noncompliance; and (4) whether the non-compliant party had been warned' that noncompliance would be sanctioned." *Guggenheim Capital, LLC v. Birbaum*, 722

---

[3] Ms. Kowalski's motion purports to address Prudential's request for "$181k Sanctions, and Default Judgment"; however, it simply recycles arguments the Court has already rejected and alleges without basis that there are "inconsistences" on the docket. Mot. for Writ, ECF No. 409 (Oct. 1, 2024). For example, Ms. Kowalski argues that the Court's adoption of the Stipulation Order is "null" because it was issued by a Magistrate Judge. *Id.* The Court has rejected this argument in various forms multiple times. *See, e.g.*, ECF No. 291 (denying motion to stay Magistrate Judge Spector's orders); ECF No. 296 ("Defendant must comply with Judge Spector's Order[.]"); ECF No. 298 (same). For these reasons, the Court does not address Ms. Kowalski's filing in this Order.

F. 3d 444, 451 (2d Cir. 2013) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F. 3d 298, 302 (2d Cir. 2009).

Severe sanctions such as entering a default judgment, should only occur in "'extreme situations' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Id.* at 451 (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F. 2d 759, 764 (2d Cir. 1990)).

## III.    DISCUSSION

"[D]iscovery orders are meant to be followed and [a] party who flouts such orders does so at [her] peril," *Aliki Foods, LLC v. Otter Valley Foods, Inc*., 726 F. Supp. 2d 159, 177 (D. Conn. 2010) (internal citations and quotation marks omitted) (alterations in original). When a party fails to file a discovery order, "a district court has broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99, 107 (2d Cir. 2002).

Prudential argues that Ms. Kowalski's failure to produce her log-in and multifactor authentication credentials for her Google Drive, OneDrive, and Dropbox accounts was willful noncompliance of a court order that warrants sanctions under Rule 37. Pl.'s Mot. at 10. Specifically, they request an entry of default judgment, adverse findings of fact, and attorney's fees under Rule 37. Plaintiff also argues that default judgment is warranted under Rule 55.

To remedy the harms caused by Ms. Kowalski's noncompliance, Plaintiffs request that the Court order Ms. Kowalski to delete any of the inadvertently produced data and any of Prudential's confidential or trade secret data she may have on her cloud storage accounts. They also request that the order prohibit Ms. Kowalski from using, accessing, or disseminating the inadvertently produced data and any trade secret or confidential data of Prudential.

14

The Court considers each of Prudential's requests in turn.

### A.  Default Judgment Under Rule 37

The Court finds that each of the four factors—willfulness of the noncompliant party, efficacy of lesser sanctions, duration of noncompliance, and warnings to the noncompliant party—weigh in favor of issuing default judgment against Ms. Kowalski under Rule 37.

#### 1.  Willfulness

On July 11, 2022, the Court first entered the Stipulated Order requiring Ms. Kowalski to provide her log-in credentials on July 11, 2022. *See* Stipulated Order.

On April 10, 2023, the Court granted Prudential's motion to compel Ms. Kowalski to comply with the Stipulated Order and provide Epiq access to her Dropbox, OneDrive, and Google Drive accounts. *See* April 2023 Order.

Since then, the Court has reiterated this requirement to Ms. Kowalski through numerous orders and rulings. *See, e.g.*, ECF No. 291 (denying Ms. Kowalski's requested stay of the April 2023 Order ); ECF No. 296 ("Defendant must comply with Judge Spector's Order[.]"); ECF No. 303 (ordering Ms. Kowalski to "provide Epiq access to her Dropbox, OneDrive, and Google Drive accounts"); ECF No. 329 (granting Plaintiff's motion for sanctions due to Ms. Kowalski's lack of compliance); ECF No. 356 (warning Ms. Kowalski of further sanctions for lack of compliance); ECF No. 382 (granting a second motion for sanctions against Ms. Kowalski).

In addition to these various orders, the Court has held multiple hearings where Ms. Kowalski has had the chance to comply with the Court's orders or explain her noncompliance. *See, e.g.*, ECF No. 279 (compliance hearing with Magistrate Judge Spector); ECF No. 302 (second compliance hearing with Magistrate Judge Spector); ECF No. 365 (sanctions hearing); ECF No. 376 (evidentiary hearing on Ms. Kowalski's access to and storage of Plaintiff's

confidential information); ECF No. 401 (compliance hearing leading to Ms. Kowalski's civil confinement); ECF No. 402 (compliance hearing during Ms. Kowalski's civil confinement).

In each of these orders and hearings, the Court has "require[d] Ms. Kowalski to do a very straightforward thing: provide her credentials and cooperate in the required multi-factor authentication to allow Epiq to search her Dropbox, Google Drive, and OneDrive to determine if any of the inadvertently produced data is located in those locations." July Ruling and Order at 29. But, in each of these orders and hearing, Ms. Kowalski has refused.

In her refusal, Ms. Kowalski has offered no reasonable justification as to why she could not comply with the Stipulated Order she originally agreed to. Ms. Kowalski does not claim that she does not have access to the accounts in question or did not receive the data at issue. In contrast, she has stated in filings that she did receive the data. *See* Memo. of Law in Opp. to Plaintiff's Mot. to Compel., ECF No. 192, at 2 (June 29, 2022) ("Plaintiff's forensic expert provided Defendant and her counsel with access to the data at issue. The data at issue was produced in two emails sent from Plaintiff's expert."). And, at the evidentiary hearing on June 3, 2024, Ms. Kowalski testified that at deposition she admitted to receiving the e-mails with the data and that the files containing the data were downloaded to her computer. *See* Tr. at 112:6–116:5. Additionally, an Epiq employee at the hearing testified that there was a digital trail showing that Ms. Kowalski's personal Google Drive, Dropbox, and OneDrive were accessed around the time that she received the inadvertently produced data. *See id.* at 36:11–37:19.

Rather than provide a good-faith reason for noncompliance, Ms. Kowalski has attempted to delay proceedings and simply stated that she "cannot give the keys to this information for [her] adversary's direct access." *Id.* at 123:2–14. To the extent that Ms. Kowalski has legitimate privacy concerns with providing Epiq access to her personal accounts, the Court has stated that it

is able to enter a protective order. Yet, this too has been rejected by Ms. Kowalski. *See* Tr., ECF No. 406, at 9:21–25 (Sept. 24, 2024) ("[THE COURT:] Are you now willing to provide the information, provided that a protective order could be entered into? MS. KOWALSKI: My username and passwords? THE COURT: Yes. MS. KOWALSKI: I'm unable to provide those.").

In sum, despite her full ability to comply, Ms. Kowalski has refused to provide the requested information for over a year. Instead, she has "forced both a Magistrate Judge and a District Judge to engage in multiple proceedings, and to endure various dilatory tactics." July Ruling and Order at 32.

Accordingly, this willful behavior weighs in favor of issuing sanctions, including default judgment, under Rule 37. *See, e.g.*, *Local Union No. 40 of the Int. Ass'n of Bridge v. Car-Win Construction*¸ 88 F. Supp. 3d 250, 264 (S.D.N.Y. 2015) ("In other words, we gave an order and defendants had the ability to comply, but they purposefully chose not to do so for reasons all their own[.] . . . Without our resorting to the dictionary, this seems as good a definition of 'willful' as any."); *Guggenheim*, 722 F. 3d at 451 (affirming district court's conclusion that party's "sustained recalcitrance" was willful and thus warranted default judgment).

## 2. Efficacy of Lesser Sanctions

Ms. Kowalski's behavior has demonstrated that lesser sanctions are ineffective to coerce compliance with the Court's orders.

On January 4, 2024, the Court first sanctioned Ms. Kowalski by finding her responsible for attorney's fees and costs associated with her noncompliance. Order Granting Mot. for Sanctions, ECF No. 329 (Jan. 4, 2024). Prudential calculated the sum of these initial fees to be $90,693.00. Memo. in Compliance with the Court's January 4 Order and Exhibits, ECF No. 338

(Feb. 16, 2024). The imposition of these sanctions proved unsuccessful, and Ms. Kowalski continued to disobey the Court's orders.

In July of 2024, the Court again granted Prudential's request for sanctions in the form of attorney's fees and costs. July Ruling and Order. The Court established a graduated sanction plan wherein Ms. Kowalski could avoid responsibility for attorney's fees and costs if she complied. *See id.* Although Ms. Kowalski was now potentially facing over $150,000 in fees and costs, *see* Pl.'s Mot. at 12, these sanctions were again unsuccessful.

On September 3, 2024, after Ms. Kowalski refused to provide her log-in and multifactor authentication credentials at a last-chance hearing, she was civilly confined to be released upon compliance. *See* Tr., ECF No. 406. This extreme measure did not work, and Ms. Kowalski continued to disobey the Court's orders when brought back the next day. *See* Order, ECF No. 392 (Sept. 4, 2024).

Rather than keep Ms. Kowalski in confinement when it appeared that she would not comply, the Court released her and allowed Plaintiff to move for alternative sanctions, including default judgment. Even with the warning of the potential for default judgement, *see* Order, ECF No. 392, Ms. Kowalski has continued not to comply with this Court's orders.

Ms. Kowalski's response, or lack thereof, to the previously instituted sanctions demonstrates their ineffectiveness and makes clear the necessity for more severe penalties, including default judgment. *See Agiwal*, 555 F.3d 298 at 303 ("Even when the Magistrate Judge imposed a lesser sanction, Agiwal still failed to comply with any of defendant's discovery requests."); *Mirlis v. Greer*, 80 F. 4th 377, 382 (2d Cir. 2023) ("[Defendant] repeatedly failed to respond to interrogatories and produce the documents [Plaintiff] requested, in violation of the

district court's many orders. This record supports the district court's determination . . . that lesser sanctions would have been inadequate given [Defendant's] continued noncompliance[.]").

### 3.  Duration of the Noncompliance

On July 11, 2022, the Stipulated Order first setting out Ms. Kowalski's responsibilities to provide log-in credentials was issued. The April 2023 Order compelling Ms. Kowalski specifically to provide Google Drive, OneDrive, and Dropbox access was issued on April 10, 2023 and required compliance by April 17, 2023. Since then, it has been over a year of noncompliance from Ms. Kowalski.

This time period is more than sufficient to demonstrate that the severe sanction of default judgment is warranted. *See, e.g.*, *Agiwal*, 555 F.3d at 4 (affirming default judgment under Rule 37 after six months of noncompliance); *Phelan v. Cambell*, 507 Fed. Appx. 14, 16 (2d Cir. 2013) (affirming default judgment after seven months of noncompliance); *Battiste-Downie v. Covenant House*, 471 Fed. Appx. 78, 79 (2d Cir. 2012) (affirming default judgment after one year of noncompliance); *see also Local Union No. 40,* 88 F. Supp. 3d. at 266 ("[D]urations of time as brief as a few months have been held to weigh in favor of dispositive sanctions. And periods of six months or more weigh even more heavily toward such remedies." (internal citations omitted)) (collecting cases).

### 4.  Notice

"[D]ue process requires that courts provide notice and an opportunity to be heard before imposing *any* kind of sanctions." *Reilly v. Natwest Markets Grp.*, 181 F.3d 253, 270 (2d Cir. 1999) (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir.1996)) (emphasis and alteration in original). The requirement to give a party notice, though, "cannot be cabined within an inflexible regime," *id.*, and even warnings that do not explicitly mention the phrase "default

judgement" can be sufficient. *See Guggenheim*, 722 F. 3d at 452–53 (finding that warning a party "regularly and often; throughout the case" was sufficient even if warnings did not mention default judgment).

Ms. Kowalski has received numerous warnings of sanctions. *See, e.g.*, ECF No. 303 ("[I]f compliance continues to be an issue, the Court will not hesitate to consider the imposition of other appropriate sanctions."); ECF No. 337 ("[I]f compliance is not obtained by March 1, 2024, the Court will consider and likely take any and all actions within the scope of its authority."); ECF No. 365 ("[T]o the extent the Court determines that there is continued noncompliance, and compliance will only be accomplished through civil confinement, the Court will consider that option at or following the upcoming sanctions hearing."); ECF No. 382 (setting out a graduated-sanctions schedule and warning Ms. Kowalski that if noncompliance continued she would be "confined civilly until she decides to comply").

She additionally has been given the opportunity to be heard through written responses and multiple in-person hearings. *See, e.g.*, ECF No. 302 (compliance hearing); ECF No. 346 (sanctions hearing); ECF No. 362 (evidentiary hearing where Ms. Kowalski's ability to comply would be discussed); ECF No. 401 (compliance hearing).

Before Prudential filed its motion for default judgment, the Court specifically warned that sanctions including "rendering a default judgment against the disobedient party" were possible. Order, ECF No. 392 (Sept. 4, 2024). Ms. Kowalski also had the opportunity to respond to Prudential's motion seeking default judgment.

The numerous warnings and opportunities to be heard constitute sufficient notice that a default judgment against Ms. Kowalski could be rendered. *See Greer*, 80 F. 4th at 382 (affirming

default judgment when party "was given ample notice that her continued noncompliance would result in sanctions, including the entry of default judgment").

Together the factors support an entry of default judgment. Ms. Kowalski has willfully chosen to disobey discovery orders, even upon the threat and imposition of sanctions by the Court; instead, she has engaged in dilatory and obstructionist tactics for over a year.

Accordingly, the Court will enter a default judgment against Ms. Kowalski under Rule 37(b)(2)(A)(vi).[4]

### B.  Adverse Finding of Fact

Prudential argues that an adverse finding of fact that Ms. Kowalski accessed, retained, and misappropriated trade secret and confidential information inadvertently sent to her by Epiq is appropriate under Rule 37. Pl.'s Memo. at 18–19; *see also* Rule 37(b)(2)(A)(i) ("[Sanctions] may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[.]").

The Court agrees.

Adverse findings of fact under Rule 37(b)(2) are generally considered a less severe sanction than a default judgment. *See Doubleline Capital v. Odebrecht Finance, Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2022 WL 3029014, at *12–13 (S.D.N.Y. July 19, 2022) (finding an adverse finding of fact to be an appropriate sanction when default judgment was too severe); *SEC v. Collector's Coffee Inc.*, No. 19 Civ. 4355 (VM) (GWG), 2021 WL 298708, at *4 (S.D.N.Y. Jan. 27, 2021) ("[Section (i)] is the least harsh sanction under Rule 37(b)(2)(A).") . Therefore, as the four factors discussed above weigh in favor of a sanction as severe as default judgment, they also weigh in favor of any adverse finding of fact.

---

[4] Because the Court finds that default judgment is appropriate under Rule 37, it does not conduct the analysis for a default judgment under Rule 55.

Here, the additional sanction of an adverse finding of fact is warranted as the requested factual finding is not cumulative of the allegations in Prudential's original Complaint. *Cf. Sagax Dev. Corp. v. ITrust S.A.*, No. 19-cv-3386 (RA) (KNF), 2021 WL 5360121, at *10 (ordering the sanction of only a default judgment, not the requested adverse finding of fact because "deeming the facts designated by the plaintiff [as] established . . . would be tantamount to entering judgment").

Accordingly, the Court establishes as fact under Rule 37(b)(2)(A)(i) that:

- Ms. Kowalski accessed and retained in her Google Drive, OneDrive, and Dropbox cloud storage accounts Prudential's trade secret and confidential information from two emails inadvertently sent by Epiq in June of 2021.

## C.    Attorney's Fees

Under Rule 37(b)(2)(C), "in addition to" the sanctions provided in section (b)(2)(A), "the court must order the disobedient party . . . to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(C).

In this case, Ms. Kowalski's failure was not substantially justified. As described throughout, she has engaged in willful noncompliance as well as dilatory tactics for over a year. Thus, the Court "must order" the payment of reasonable expenses. Fed. R. Civ. Pro. 37(b)(2)(C); *see also Novak v. Wolpoff & Abramson LLP*, 536 F. 3d 175, 177 ("The use of the word 'shall' certainly suggests that an award of expenses is mandatory unless one of the two exceptions— substantial justification or other circumstances—applies.").[5]

---

[5] As the Second Circuit provides in *Novak*, Rule 37 has since been "slightly reworded as part of a general restyling." *Novak*, 536 F. 3d at 175 fn. 1 (internal quotation mark omitted). The Rule now includes "will" instead of "shall."

Prudential seeks a total of $181,175.26 in attorney's fees and costs, which accounts for efforts seeking Ms. Kowalski's compliance since May 5, 2023. *See* Memo. in Compliance with the Court's January 4 Order and Exhibits, ECF No. 338 (Feb. 16, 2024) (calculating costs seeking compliance from May 5, 2023 to January 4, 2024; including declarations of Joseph E. Wolfson and Jonathan B. Orleans, accountings of time, and invoices from Epiq); Memo. in Compliance with the Court's July 30 Order and Exhibits, ECF No. 384 (Aug. 16, 2024) (calculating costs for May 8, 2024 and June 3, 2024 hearings; including declarations of Joseph E. Wolfson and Jonathan B. Orleans and accountings of time); Pl.'s Mot. and Exhibits (calculating costs from entry of the July Ruling and Order to the hearing on September 4, 2024; including declarations of Joseph E. Wolfson and Jonathan B. Orleans and accountings of time).

Having reviewed the above submissions for attorney's fees and costs, the costs requested are reasonable under the applicable law. *See Howell v. Yale University*, No. 3:22-cv-01160 (JHC), 2023 WL 4564409, at *2 (D. Conn. July 17, 2023) ("In assessing . . . the reasonable hourly rate[,] the Second Circuit has directed courts to 'bear in mind all of the case-specific variables that [it] and other circuits have identified as relevant to the reasonableness of attorney's fees[.]' . . . In analyzing . . . the reasonable number of hours required[,] courts consider, among other things, the quality of the representation and the complexity of the work." (internal citations omitted)); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider . . . that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.").

As to the reasonableness of the hourly rates, the hourly rates charged by Joseph E.

Wolfson (a partner), Jonathan Orleans (a partner), and Paige Hogan (an associate)—$665 ($625

earlier in the case), $450, and $342 respectively—are either within the realm of reasonable

hourly rates charged in the District of Connecticut, given the specific expertise and issues

involved in this case, *see, e.g.*, *Senquiz v. Hartford Auto Group, Inc.*, No. 3:20-cv-01304 (JBA),

2022 WL 2037851, at *1 (D. Conn. 2022) (awarding rate of $475 for a partner and $350 for an

associate); *Barnes Group v. Does*, No. 12-cv-1688 (JBA), 2014 WL 580896, at *1 (D. Conn.

Feb. 12, 2014) (awarding rate of $500 for a partner and $375 for an associate), or—more

specifically in the case of Mr. Wolfson—are sufficiently justified based on the specific expertise

brought to bear in this case. *See* Declaration of Joseph E. Wolfson at ¶ 5 (attesting to having

"represented Prudential in a variety of matters for over twenty years which give me a unique

knowledge of Prudential's business that was important to Prudential's representation in this

matter."); *id.* at ¶ 7 (attesting to work[ing] to ensure Prudential would obtain a beneficial result

through an efficient use of each of our experiences and knowledge."); *cf. Horror Inc., v. Miller*,

No. 3:16-cv-1442 (SRU), 2022 WL 4473426, at *6 (D. Conn. Sept. 26, 2022) (awarding out-of-

district rate of $795 per hour to a partner in intellectual property case based on experience,

expertise, and nature of claims); *Lliguicota v. Diamond Nail & Spa CT Inc.*, No. 3:21-cv-1073

(VAB), 2024 WL 4471355, at *3 (D. Conn. Oct. 11, 2024) (approving an above average hourly

rate when attorney had unique experience, expertise, and skills relevant to the client).

As to the reasonableness of the hours expended on the case, the hours spent on this case,

especially considering the amount of time required given Ms. Kowalski's continued

noncompliance, are more than adequately justified, *see, e.g.*, *Friedman v. SThree PLC.*, No.

3:14-cv-00378 (AWT), 2017 WL 4082678, at *10 (D. Conn. Sept. 15, 2017) (awarding fees for

all hours documented that were "associated with plaintiff's failure to comply"); *Monaghan v. SZS 33 Assoc., L.P.*,154 F.R.D. 78, 86 (S.D.N.Y. 1994) (awarding fees for all hours "appropriately attributed to the sanction meted out"), and Ms. Kowalski, by failing to respond at all to these specific requests, has not contested them. *See Bruce Kirby, Inc. v. LaserPerformance (Europe) Lmt.*, No. 3:17-cv-01158 (JAM), 2020 WL 502653, at *6 (D. Conn. Jan. 31, 2020) ("I assume that the defendants have no objection to the number of hours otherwise billed by [attorneys]. Accordingly, I conclude that the hours billed by each [attorney] to be reasonable."); *Kandy Co., Inc. v. Barbara*, No. 11-cv-478A, 2012 WL 3838179, at *3 (W.D.N.Y. Sept. 4, 2012) ("Absent any substantive objection to the time cited, this Court adopts the time claims sought by plaintiff.); *Horror Inc.*, 2022 WL 4473426, at *6 fn.4 (finding that when only hours worked were challenged, "[p]laintiffs, in effect, have chosen to waive any claim that the hourly rates sought are not reasonable").

Accordingly, Prudential's request for attorney's fees and costs in the amount of $181,175.26 will be granted.

## IV.    CONCLUSION

For the reasons explained above, the Court Prudential's motion is **GRANTED.**

The Court will enter default judgment against Ms. Kowalski.

The following adverse finding of facts has been established: Ms. Kowalski accessed and retained in her Google Drive, OneDrive, and Dropbox cloud storage accounts Prudential's trade secret and confidential information from two emails inadvertently sent by Epiq in June of 2021.

Ms. Kowalski must pay to Prudential attorney's fees and costs, an amount totaling **$181,175.26, by January 31, 2025.**

The Parties are further ordered to do the following for the deletion of protected data:

25

- Prudential will direct Epiq Systems ("Epiq") to delete permanently any Prudential information contained on the devices that Ms. Kowalski provided to Epiq ("Kowalski Devices"), including the list of data and files to be deleted pursuant to the parties' Confidential Settlement Agreement ("Deletion List"), Exhibit B of Plaintiff's Mot. for Sanctions and Default Judgment, ECF No. 398-4; ECF No. 399.

- Prudential will direct Epiq to return the Kowalski Devices to Ms. Kowalski within seven business days following Epiq's completion of its review and deletion obligations ("Epiq Return Date").

- To remedy Prudential's inability to ensure Ms. Kowalski may no longer use or access Prudential confidential and/or trade secret information located on her cloud storage accounts, including Google Drive, Dropbox, and OneDrive, Ms. Kowalski shall delete any Prudential data which Epiq inadvertently provided to Ms. Kowalski, or information contained on the Deletion List in her possession or otherwise accessible to Ms. Kowalski, whether through devices in her possession or third-party cloud sources within thirty (30) days of this Order.

- Ms. Kowalski is prohibited from using, accessing, or disseminating any Prudential information, including any Inadvertently Produced Data or information listed on the Deletion List.

- Ms. Kowalski shall not at any point in the future access, review, save, copy print, disclose, share, or in any way use any Prudential proprietary or confidential/and or trade secret information, including without limitation the inadvertently produced data or information listed on the Deletion List.

26

The Clerk of Court is respectfully directed to enter judgment for Prudential and close this case. This Court, however, retains jurisdiction over this case, to the extent necessary to enforce the ensuing judgment.

**SO ORDERED** at New Haven, Connecticut, this 1st day of November, 2024.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge